# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Jeffrey Lee Cohen

    v.                                 Case No. 16-cv-385-SM

Nancy A. Berryhill, Acting
Commissioner, Social
Security Administration

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Jeffrey Cohen moves to reverse the Acting Commissioner's decision to deny his application for Social Security disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. The Acting Commissioner, in turn, moves for an order affirming her decision. For the reasons that follow, the decision of the Acting Commissioner, as announced by the Administrative Law Judge ("ALJ"), should be affirmed.

## I. Standard of Review

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if

> supported by substantial evidence, shall be conclusive
> . . . .

42 U.S.C. § 405(g). However, the court "must uphold a denial of social security disability benefits unless 'the [acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the acting Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)). In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). But, "[i]t is the responsibility of the [acting Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [acting Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS,

955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations omitted).  Moreover, the court "must uphold the [acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam).  Finally, when determining whether a decision of the Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole."  Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).


## II.  Background

The parties have submitted a Joint Statement of Material Facts.  That statement, document no. 12, is part of the court's record and will be summarized here, rather than repeated in full.

In April of 2013, Cohen presented to his primary care provider ("PCP") with a tremor in his right hand and arm.  His PCP referred him to a neurologist.  After examining Cohen, the neurologist gave the following impression:

> This individual has a long history of decreased sense of smell.  He now has micrographia, stooped posture, abnormal gait, bradykinesia and paucity of movement, a course right hand tremor and cogwheel rigidity.  These are all signs and symptoms of Parkinson's disease or parkinsonism.

Administrative Transcript (hereinafter "Tr." 261).[1]  Cohen's

Parkinson's disease has been treated with medication.

In March 2014, Cohen was seen by Dr. George Neal, who

performed a neurology consultative examination at the request of

the Social Security Administration ("SSA").  Under the heading

"Impairments," Dr. Neal wrote:

> The physical examination does not reveal physical
> findings which would be indicative of significant
> impairments.  By self-report, he has no limitation in
> sitting, lifting, carrying or bending.  He can stand
> for an unspecified duration.  He does report
> limitation in walking for one-half hour or to maximum
> one-half mile.

Tr. 302-03.

Also in March 2014, Dr. Jonathan Jaffe, a state agency

consulting physician, provided an assessment of Cohen's residual

functional capacity ("RFC"),[2] based upon a review of Cohen's

medical records.  In his assessment, Dr. Jaffe opined that Cohen

could lift and/or carry 10 pounds frequently and 20 pounds

---

[1] Micrographia is "a dysgraphia in which handwriting is tiny
or decreases in size from normal to minute, seen in
parkinsonism."  Dorland's Illustrated Medical Dictionary 1159
(32d ed. 2012).  Bradykinesia is "[a] decrease in spontaneity
and movement."  Stedman's Medical Dictionary 250 (28th ed.
2006).  Cogwheel rigidity is "rigidity of muscle that gives way
in a series of little jerks upon being passively stretched,
analogous to the ratcheting movement when a spring-loaded rod
drops into the successive notches of a cog."  Dorland's, supra,
at 1647.

[2] "Residual functional capacity" is a term of art that means
"the most [a claimant] can still do despite [his] limitations."
20 C.F.R. § 404.1545(a)(1).

occasionally, that he could stand and/or walk (with normal breaks) for about six hours in an eight-hour workday, could sit (with normal breaks) for about six hours in an eight-hour work day, and could push and/or pull the same amount he could lift and/or carry. With respect to postural limitations, Dr. Jaffe opined that Cohen could only occasionally climb ramp/stairs, climb ladders/ropes/scaffolds, balance, stoop, kneel, crouch, or crawl. Finally, Dr. Jaffe identified no manipulative, visual, communicative, or environmental limitations.

In addition to the report of Dr. Neal's consultative examination and Dr. Jaffe's RFC assessment, the record also includes three medical source statements describing Cohen's ability to do physical work related activities, each completed by the same treating physician, Dr. Priya Shastri. Dr. Shastri is a neurologist who first began seeing Cohen in September 2013.

Dr. Shastri completed her first medical source statement in July 2014. In it, she opined that Cohen could lift and carry up to ten pounds continuously, 11 to 20 pounds frequently, and 21 to 50 pounds occasionally, but could never lift or carry more than 50 pounds. She further opined that Cohen could sit for two hours at a time without interruption and for five hours in an eight-hour workday, could stand for one hour at a time and for three hours in an eight-hour workday, and could walk for one hour at a time and for two hours in an eight-hour workday. She

also indicated that Cohen could reach, handle, finger, feel, and push/pull with his dominant right hand frequently and with his non-dominant left hand continuously, and also indicated that he could operate foot controls with his right foot frequently and with his left foot continuously. With regard to postural activities, Dr. Shastri stated that Cohen could frequently climb stairs and ramps, climb ladders or scaffolds, balance, stoop, kneel, crouch, and crawl. Finally, she opined that Cohen could never tolerate unprotected heights, moving mechanical parts, extreme cold, or extreme heat, could occasionally tolerate dust, odors, fumes, pulmonary irritants, and vibrations, could frequently tolerate humidity and wetness, and could continuously tolerate operating a motor vehicle.

In her second medical source statement, completed in November 2014, Dr. Shastri identified the same limitations as she had in July, with the following exceptions. She reduced Cohen's capacity for reaching, handling, fingering, feeling, and pushing/pulling with his dominant right hand from frequent to occasional. She also reduced his tolerance for operating a motor vehicle from continuous to occasional. In support of her opinion on Cohen's capacity for sitting, standing, and walking, Dr. Shastri wrote:

> He has increased tone in [right] leg which limits his
> ability to walk. He suffers from fatigue from the
> [P]arkinson's disease and the sleep disturbances

associated [with] Parkinson's [disease].

Tr. 347.

Finally, in her third medical source statement, completed in March 2015, Dr. Shastri found Cohen to me more limited than he had been four months previously. Specifically, she reduced his capacity for sitting in an eight hour work day from five hours to four, reduced his capacity for standing from three hours to one, and reduced his capacity for walking from two hours to one. In support of her opinion on Cohen's capacity for sitting, standing, and walking, Dr. Shastri wrote:

> He has increased tone in [right] leg which limits his ability to walk. He suffers from fatigue from the Parkinson's disease and the sleep disturbances associated with Parkinson's. He has to nap frequently & often nods off while sitting. His drowsiness constantly impairs his concentration and his ability to drive.

Tr. 323.

Cohen received a hearing on his claim before an ALJ. At the hearing, the ALJ asked a vocational expert ("VE") to consider

> a hypothetical individual of the same age, education, and work background as the claimant [who] is capable of performing work at the light level [and] is limited to occasional climbing of ramps and stairs, ladders, ropes, and scaffolds, balancing, stooping, kneeling, crouching, and crawling.

Tr. 59. According to the VE, such a person could perform claimant's past work as a sales manager and as a card player as

7

that work is usually performed, but could not perform those jobs as Cohen had actually performed them. The VE further testified that her answer would be the same if the exertional level were reduced from light to sedentary. But, she also testified that such a person could not perform Cohen's past work if he or she "would be expected to be off-task 15 to 20 percent of a typical workday or typical workweek due to the effects of fatigue." <u>Id.</u> at 60.

After the hearing, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

> 3. The claimant has the following severe impairment: Parkinson's Disease (20 CFR 404.1520(c)).
>
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> . . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can [only] occasionally climb ladders, ropes, scaffolds, ramps, and stairs, balance, stoop, kneel, crouch, and crawl.
>
> . . . .
>
> 6. The claimant is capable of performing past relevant work as a sales manager and card player. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

Tr. 14, 18.

## III. Discussion

### A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. §§ 423(a)(1)(A)-(D). The only question in this case is whether the ALJ correctly determined that Cohen was not under a disability from April 5, 2013, through July 31, 2015.

To decide whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an ALJ is required to employ a five-step process. See 20 C.F.R. § 404.1520.

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20
C.F.R. § 416.920, which outlines the same five-step process as
the one prescribed in 20 C.F.R. § 404.1520).

The claimant bears the burden of proving that he is
disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He
must do so by a preponderance of the evidence.  See Mandziej v.
Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v.
Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).  Finally,

> [i]n assessing a disability claim, the [Commissioner]
> considers objective and subjective factors, including:
> (1) objective medical facts; (2) [claimant]'s
> subjective claims of pain and disability as supported
> by the testimony of the claimant or other witness; and
> (3) the [claimant]'s educational background, age, and
> work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797
F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690
F.2d 5, 6 (1st Cir. 1982)).

**B.  Cohen's Claims**

Cohen appears to claim that the ALJ erred by: (1) failing
to determine, at Step 3, that his Parkinson's disease satisfied
the criteria for a listed impairment; (2) making a faulty
assessment of his RFC; and (3) determining, at Step 4, that he
was capable of performing his past relevant work.  The ALJ
committed no reversible error.

1.  Step 3

Cohen appears to claim that the ALJ erred by failing to

determine that his Parkinson's disease met the conditions for
that disorder that are set out in the social security
regulations.  The court does not agree.

The social security regulations identify, as a listed
impairment:

> Parkinsonian syndrome with the following signs:
> Significant rigidity, brady kinesia, or tremor in two
> extremities, which, singly or in combination, result
> in sustained disturbance of gross and dexterous
> movements, or gait and station.

20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 11.06.

After reviewing Cohen's medical records, Dr. Jaffe
determined that while Cohen's Parkinson's disease was a
medically determinable impairment, its severity did not rise to
the level required to meet Listing 11.06.  In an office note
dated March 23, 2015, which Dr. Shastri prepared on the same day
she completed her third medical source statement, she had this
to say about her neurological examination of Cohen:

> Movement disorder exam: Some mild hypophonia and
> hypomimia, no evidence of a rest tremor, trace
> increased tone in right upper extremity, no
> cogwheeling.  Slight increased tone in right lower
> extremity, and trace tone in the left lower extremity,
> slight bradykinesia with rapid alternating movements
> in his right upper extremity.  No brady kinesia in the
> lower extremities.  Gait: He is able to rise out of a
> chair without assistance.  Good posture, slight
> decreased right arm swing.

Tr. 334 (emphasis added).[3]

---

[3] Hypophonia is "[a]n abnormally weak voice due to

While claimant points to various medical records that
mention one or more of the signs mentioned in Listing 11.06,
none of them appear to document either "[s]ignificant rigidity,
brady kinesia, or tremor in two extremities," Listing 11.06
(emphasis added), or "sustained disturbance of gross and
dexterous movements, or gait and station," id. (emphasis added),
which are required for a claimant's Parkinson's disease to meet
or medically equal the severity of Listing 11.06.  Moreover,
even if claimant had identified a medical record establishing
that Cohen's Parkinson's disease satisfied Listing 11.06, Dr.
Shastri's March 23, 2015, office note plainly does not document
a case of Parkinson's that satisfies Listing 11.06,[4] and it is
for the ALJ to resolve conflicts in the evidence.  See Irlanda
Ortiz, 955 F.2d at 769.  In sum, the ALJ did not err by
determining that Cohen's Parkinson's disease did not meet
Listing 11.06 because his determination is supported by
substantial evidence.

---

incoordination of the muscles concerned in vocalization."
Stedman's, supra note 1, at 935.  Hypomimia is "a "lack of
facial expression with reduced blinking."  Dorland's, supra note
1, at 903.

[4] Specifically, she reports bradykinesia that is "slight"
rather than "significant" and that is confined to a single
extremity.  She also reports "no evidence of a rest tremor."

2.  The ALJ's RFC Assessment

Cohen next claims that the ALJ erred in formulating his RFC because he failed to: (1) give appropriate weight to Dr. Shastri's third medical source statement; and (2) incorporate limitations in his RFC based upon the testimony he gave at his hearing.  The court considers each argument in turn.

### a.  Medical Opinions

According to Cohen, the ALJ committed reversible error by giving great weight to the opinions of Drs. Neal and Jaffe and discounting the opinion expressed in Dr. Shastri's third medical source statement.  The court does not agree.

As a general rule, the SSA gives the greatest weight to medical opinions from a claimant's treating physician(s).  See 20 C.F.R. § 404.1527(c).  Specifically,

> [i]f [an ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight.

20 C.F.R. § 404.1527(c)(2).  Cohen does not appear to claim that the ALJ should have given controlling weight to Dr. Shastri's third opinion and, indeed, such a claim would not succeed.  Not only is Dr. Shastri's third opinion inconsistent with the opinions of Drs. Neal and Jaffe, it is also inconsistent with her own previous opinions, which the ALJ correctly pointed out.

13

Because the ALJ did not give Dr. Shastri's third opinion controlling weight, he was obligated to determine the amount of weight to give that opinion by considering: (1) the length of Cohen's treatment relationship with Dr. Shastri and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of Dr. Shastri's opinion; (4) the consistency of the opinion with the record as a whole; (5) Dr. Shastri's medical specialization; and (6) any other factors that may support or contradict the opinion. See 20 C.F.R. §§ 404.1527(c)(2)-(6). In his decision, the ALJ discounted Dr. Shastri's third opinion because: (1) it was inconsistent with her two previous opinions; (2) Dr. Shastri provided little explanation for the diminution of capacity to which she opined in her third opinion; and (3) that opinion was not supported by either Dr. Shastri's treatment notes or claimant's self reporting to Dr. Shastri. The court concludes that the ALJ fulfilled his obligation, under 20 C.F.R. § 404.1527(c)(2), to provide good reasons for his decision to give little weight to Dr. Shastri's third opinion.

As a preliminary matter, the court notes that the ALJ acknowledged Dr. Shastri's specialization in neurology, see 20 C.F.R. § 1527(c)(5), and described the scope of her treatment relationship with Cohen, see 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii). Beyond that, the court can find no fault with the ALJ's

reliance upon the discrepancies between Dr. Shastri's third
opinion and the two opinions she had previously given.

In November 2014, Dr. Shastri opined that Cohen had
exertional abilities that were fully consistent with the
capacity to perform light work for eight hours a day.  See 20
C.F.R. § 404.1567(b) (setting out the exertional requirements
for light work).  In March 2015, in her third opinion, Dr.
Shastri opined that Cohen still had an ability to lift and/or
carry that was consistent with light work, but was only able to
sit, stand, and walk for a total of six hours in an eight hour
workday, down from the ten hours of sitting, standing, and
walking she said he could do back in November.  But, in the
treatment note she wrote on the same day she wrote her third
opinion, Dr. Shastri said:

> Since last seeing me in November, Mr. Cohen feels his
> Parkinson's is not significantly worsened.  He
> continues to notice fatigue during the day, and
> sometimes he will have to take frequent naps.
>
> . . . .
>
> At this point, his exam looks generally stable.  . . .
> The fatigue I feel is secondary to the Mirapex;
> however, the Mirapex continues to provide him with
> symptomatic benefit with other symptoms of Parkinson
> disease.  In the future if fatigue continues to be an
> issue, I will consider starting selegiline for both
> symptomatic benefit as well as some neuro protection,
> as well as some energizing benefit.

Tr. 334-35.

Dr. Shastri's treatment note provides substantial evidence for the ALJ's decision to give little weight to her third opinion.  In that note, Dr. Shastri reported that Cohen told her that his symptoms had not worsened since she had opined that he was capable of performing light work on a full-time basis.  She also reported that, based upon her examination, his condition was "generally stable."[5]  Thus, there is nothing in that note to support the increased limitations on sitting, standing, and walking that Dr. Shastri included in her third opinion. Moreover, her note attributed Cohen's fatigue to his medication rather than his Parkinson's disease, and indicated that she had a plan to solve that problem with a change in medication, if necessary.  In sum, because Dr. Shastri's treatment note does not support the reduction in capacity that she reported in her third opinion, the ALJ did not err by giving limited weight to that opinion.[6]

---

[5] Those reports, in turn, undermine claimant's argument that the ALJ was obligated to credit Dr. Shastri's third opinion because of the progressive nature of Parkinson's disease.

[6] In an effort to add weight to Dr. Shastri's third opinion, claimant points to a letter that Dr. Shastri wrote in July 2015, in which she stated that her third statement "is most accurate." Tr. 353.  But that is all the letter says; Dr. Shastri does not indicate why her third opinion is more accurate than the other two or identify any contemporaneous medical evidence that makes it so.  Accordingly, her letter has little persuasive value.

### b.   Claimant's Testimony

Cohen also claims that the ALJ's assessment of his RFC is flawed because the ALJ mishandled the testimony he offered at his hearing.[7]  Claimant's argument on this point is confusing at best.  He hints at, but does not expressly articulate several different theories: (1) the ALJ completely ignored his testimony; (2) the ALJ considered his testimony but incorrectly weighed that evidence against other evidence in the record; and (3) the ALJ improperly determined that his statements about his symptoms were not entirely credible.  Because the ALJ expressly cited claimant's testimony, see Tr. 15, and assessed its credibility, see id., claimant's argument that the ALJ ignored his testimony necessarily fails.  And given that "the resolution of conflicts in the evidence is for the [acting Commissioner], not the courts," Irlanda Ortiz, 955 F.2d at 769, claimant's second argument is equally infirm.  That leaves his ill developed argument that the ALJ improperly assessed the credibility of his testimony about his symptoms.

At one point in his motion, claimant notes the ALJ's finding that his "statements concerning the intensity,

---

[7] In point of fact, some of the allegedly mishandled testimony was not testimony at all but, rather, is drawn from Cohen's counsel's opening statement.  See Cl.'s Mot. (doc. no. 9) 15; Tr. 31-32.

persistence and limiting effects of [his] symptoms [were] not

entirely credible." Tr. 15. But for reasons that are unclear,

while the ALJ expressly stated that he considered claimant's

symptoms in light of Social Security Ruling ("SSR") 96-7p,[8] Tr.

14, which is titled "Evaluation of Symptoms in Disability

Claims: Assessing the Credibility of an Individual's

Statements," 1996 WL 374186 (S.S.A. July 2, 1996), claimant's

motion does not cite SSR 96-7p. Nor does claimant argue that

the ALJ misanalysed the seven factors listed in SSR 96-7p "that

the adjudicator must consider in addition to the objective

medical evidence when assessing the credibility of an

individual's statements." Id. at *3. Rather, after mentioning

the ALJ's credibility assessment, claimant's motion takes a

strange turn; it segues and ultimately transforms into a

critique of the ALJ's weighing of the medical opinions, an issue

the court has already addressed. However, even assuming that

claimant actually intends to make a proper challenge to the

ALJ's assessment of the credibility of his testimony about his

---

[8] After the ALJ issued his decision on Cohen's claim, SSR
96-7p was superseded by SSR 16-3p, 2016 WL 1119029 (S.S.A. Mar.
16, 2016. But "[b]ecause the ALJ issued his decision while SSR
96-7p was in effect, the court evaluates the ALJ's credibility
assessment under that regulation." Natsis v. Berryhill, No. 16-
cv-063-LM, 2017 WL 1032258, at *3 n.3 (D.N.H. Mar. 16, 2017)
(quoting Regaldo v. Colvin, No. 15-cv-299-PB, 2016 WL 4775525,
at *8 (D.N.H. Sept. 14, 2016)).

symptoms, such a challenge would fail.

According to applicable guidance from the SSA, "[a] symptom is an individual's own description of his or her physical or mental impairment(s)." SSR 96-7p, 1996 WL 374186, at *2. However, "an individual's statement(s) about his or her symptoms is not in itself enough to establish the existence of a physical or mental impairment or that the individual is disabled." Id.

When "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness," id., are alleged, and must be evaluated by an ALJ, SSR 96-7P sets out

> a specific staged inquiry that consists of the following questions, in the following order: (1) does the claimant have an underlying impairment that could produce the symptoms he or she claims?; (2) if so, are the claimant's statements about his or her symptoms substantiated by objective medical evidence?; and (3) if not, are the claimant's statements about those symptoms credible?

Hersey v. Colvin, No. 16-cv-068-JL, 2016 WL 6476956, at *2 (D.N.H. Nov. 2, 2016) (quoting Comeau v. Colvin, No. 12-cv-478-JL, 2013 WL 5934308, at *8 (D.N.H. Nov. 1, 2013)).

If and when an adjudicator reaches the credibility question, then he or she must resolve it by considering the following evidence:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

19

3. Factors that precipitate and aggravate the
symptoms;

4. The type, dosage, effectiveness, and side effects
of any medication the individual takes or has taken to
alleviate pain or other symptoms;

5. Treatment, other than medication, the individual
receives or has received for relief of pain or other
symptoms;

6. Any measures other than treatment the individual
uses or has used to relieve pain or other symptoms
(e.g., lying flat on his or her back, standing for 15
to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's
functional limitations and restrictions due to pain or
other symptoms.

SSR 96-7p, 1996 374186, at *3.

Finally, as Judge McCafferty explained in a recent

decision:

    An ALJ's credibility determination must be
    supported by substantial evidence, see Irlanda Ortiz,
    955 F.2d at 769, and "is entitled to deference,
    especially when supported by specific findings,"
    Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st
    Cir. 1987) (citing Da Rosa v. Sec'y of HHS, 803 F.2d
    24, 26 (1986)).  That said, an ALJ's "determination or
    decision must contain specific reasons for the finding
    on credibility, supported by the evidence in the case
    record, and must be sufficiently specific to make
    clear to the individual and to any subsequent
    reviewers the weight the adjudicator gave to the
    individual's statements and the reasons for that
    weight." SSR 96-7p, 1996 WL 374186, at *2 (emphasis
    added).  In other words, "[i]t is not sufficient for
    the adjudicator to make a single, conclusory statement
    that 'the individual's allegations have been
    considered' or that 'the allegations are (or are not)
    credible.'"  Id.  To perform a proper discussion and
    analysis, the ALJ "must identify what testimony is not
    credible and what evidence undermines the claimant's

complaints." <u>Balaguer v. Astrue</u>, 880 F. Supp. 2d 258, 268 (D. Mass. 2012) (quoting <u>Bazile v. Apfel</u>, 113 F. Supp. 2d 181, 187 (D. Mass. 2000); citing <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995)).

<u>Young v. Colvin</u>, No. 13-cv-551-LM, 2014 WL 5605082, at *5 (D.N.H. Nov. 4, 2014).

The ALJ in this case performed a credibility assessment that complies fully with all of the principles described above. First, he devoted a paragraph to identifying the specific testimony he was considering, which included testimony about fatigue and decreased concentration.  Then he determined "that the claimant's medically determinable impairment could reasonably be expected to cause some of the alleged symptoms." Tr. 15.  But before determining that "the medical records do not support the severity of the symptoms alleged," Tr. 17, the ALJ devoted nearly two pages to an analysis of those records, specifically identifying the evidence that undermined claimant's statements.  Finally, at the third stage in the inquiry, the ALJ determined that the credibility of claimant's statements about his symptoms was undermined by a number of specific factors including his daily activities and the fact that his "fatigue was not severe enough at [his] most recent [doctor] visit to warrant an immediate medication change."  Tr. 17.  To conclude, the ALJ's credibility analysis follows exactly the format

required, and provides both specific reasons and substantial evidentiary support.  Nothing more was required.

   3.  Step 4

   At step four, the ALJ relied upon the testimony of the VE to determine that claimant had the RFC to perform his past work.  Cohen claims that the ALJ's Step 4 finding is erroneous for two reasons, but neither of his claims is meritorious.

   First, claimant argues that the VE's testimony does not count as substantial evidence to support the ALJ's decision because the VE's testimony was given in response to a hypothetical question from the ALJ that incorporated an RFC that did not accurately describe his limitations.  That argument is based upon a correct principle of law, i.e., that "an ALJ's step [4 or] 5 determination is not based upon substantial evidence if the hypothetical question the ALJ asks a VE erroneously omits relevant limitations," Gillen v. Colvin, No. 16-cv-59-JL, 2017 WL 775785, at *8 (D.N.H. Feb. 28, 2017) (citing Marshall v. Colvin, No. 14-cv-239-PB, 2015 WL 248615, at *4 (D.N.H. Jan. 20, 2015); Arocho v. Sec'y of HHS, 670 F.2d 374, 375 (1st Cir. 1982)).  However, that principle has no application in this case because the ALJ did not err in the way he handled either Dr. Shastri's third opinion or claimant's testimony.  Accordingly, the ALJ's hypothetical question did not omit any relevant limitations, which means that the VE's response to that question

qualifies as substantial evidence to support the ALJ's Step 4
finding.

Claimant also makes the following argument concerning the
ALJ's Step 4 finding:

> In addition, the ALJ improperly relied on the
> vocational evidence as supporting that plaintiff could
> perform his past relevant work.  The vocational expert
> clearly testified that within the ALJ's hypothetical,
> the plaintiff could perform past relevant work as
> generally performed, but not as <u>actually had been
> performed by plaintiff</u>.  There was no vocational
> evidence supporting that plaintiff could perform his
> past relevant work as it had actually been performed;
> thus, the [Acting] Commissioner did not meet her
> burden.

Cl.'s Mot. (doc. no. 9) 12-13 (emphasis added, citation to the
record omitted).  The problem with that argument is that a
claimant's ability to perform his past relevant work as actually
performed in not the only test for determining whether he can
perform his past relevant work.  Rather, "a claimant retains the
capacity to perform his or her past relevant work . . . [if he
or she] retains the capacity to perform the functional demands
and job duties of the job as ordinarily required by employers
throughout the national economy."  SSR 82-61, 1982 WL 31387, at
*1-2 (S.S.A. 1982); <u>see also</u> <u>Santiago v. Sec'y of HHS</u>, 944 F.2d
1, 5 n.1 (1st Cir. 1991) ("when the demands of the particular
job which claimant performed in the past cannot be met, if the
claimant has the capacity to meet the functional demands of that
occupation as customarily required in the national economy, then

a finding of non-disability also follows"); Charkowski v. Berryhill, No. 15-13356-GAO, 2017 WL 1080910, at *7 (D. Mass. Mar. 22, 2017) ("Under sections 404.1520(e) and 416.920(e) of the regulations, a claimant will be found to be 'not disabled' when it is determined that he or she retains the RFC to perform . . . [t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy.").  In short, the VE's testimony that Cohen could perform his past relevant work as that work is generally performed is substantial evidence in support of the ALJ's Step 4 finding, and claimant's argument to the contrary is incorrect.


## IV. Conclusion

Because the ALJ committed neither a legal nor a factual error in evaluating Cohen's claim, see Manso-Pizarro, 76 F.3d at 16, his motion for an order reversing the Acting Commissioner's decision, document no. 9, should be denied, and the Acting Commissioner's motion for an order affirming her decision, document no. 11, should be granted.

Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file an objection within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57

(1st Cir. 2011); <u>Sch. Union No. 37 v. United Nat'l Ins. Co.</u>, 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).


_____
Andrea K. Johnstone
United States Magistrate Judge

April 12, 2017


cc:  Christine Woodman Casa, Esq.
     T. David Plourde, Esq.